UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
**UNITED STATES OF AMERICA,**               )
                                            )     **CRIMINAL ACTION**
         **v.**                             )     **NO.  4:20-40036-TSH**
                                            )
**VINCENT KIEJZO,**                         )
                                            )
         **Defendant.**                     )
_____ )

### ORDER AND MEMORANDUM ON DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S DISCOVERY ORDER (Docket No. 117)

**April 11, 2022**

**HILLMAN, D.J.**

The defendant, Vincent Kiejzo, is charged with possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).  In July 2021, the defendant filed a motion to compel discovery, which, upon referral, a Magistrate Judge denied.  (Docket No. 106).  The defendant objects to the Magistrate Judge's decision.  (Docket No. 117).  Because the Magistrate Judge's decision is neither contrary to law nor clearly erroneous, the Court *__overrules__* the defendant's objection.

### Background

In September 2020, law enforcement sought a search warrant for a residence in Milford, Massachusetts.  (Docket No. 80-6).  Agent Caitlin Moynihan of the United States Department of Homeland Security averred that there was probable cause to believe that an Internet user at the residence had accessed two hidden child pornography websites, referred to as "Website 2" and "Website 3," on the "Tor network," a computer network designed to facilitate anonymous communication over the Internet.  (Id. at ¶¶ 5, 7).

Agent Moynihan averred that Website 2 was an online bulletin board dedicated to the advertisement and distribution of child pornography that operated from September 2016 to June 2019, and that Website 3 was an online forum dedicated to the sexual exploitation of minor and/or prepubescent males that operated from 2013 to June 2019. (Id. at ¶¶ 15, 23). She provided detailed descriptions of images of child pornography found on each site. (Id. at ¶¶ 22, 29). She further averred that in June 2019, the computer servers hosting each site, both of which were located outside the United States, were seized by a foreign law enforcement agency. (Id. at ¶¶ 15, 23).

Agent Moynihan averred that in August 2019, a foreign law enforcement agency notified United States law enforcement that, on May 12, 2019, a specific IP address was used to access online child sexual abuse and exploitation material on Website 2 and Website 3. (Id. at ¶¶ 31-32). Agent Moynihan averred that the notifying foreign law enforcement agency had a long history of sharing criminal investigation information with the United States, and that it had represented that it had not interfered with any computer in the United States to obtain the IP address. (Id. at ¶ 33). Agent Moynihan also averred that United States law enforcement did not participate in the "investigative work" of the notifying law enforcement agency. (Id.).

Agent Moynihan averred that United States law enforcement determined, through an administrative subpoena, that the IP address was registered to the Milford residence. (Id. at ¶ 39). After approval from a Magistrate Judge (the same Magistrate Judge who decided the instant discovery dispute), officers executed a search warrant for the residence. (Docket Nos. 80-5; 2-1 at ¶ 5). The defendant, who lived at the residence, was present during the search. (Docket No. 2-1 at ¶ 6). Officers found a thumb drive in the defendant's bedroom containing video files depicting child pornography. (Id. at ¶¶ 8-11). The defendant admitted that the thumb drive contained child

pornography, and that the thumb drive was his. (Id. at ¶ 12). Thereafter, the defendant was arrested and charged with possession of child pornography. (Docket No. 13).

In February 2021, the defendant, through counsel, sent the government a request for discovery. (Docket No. 80-1). The defendant requested the actual names of Website 2 and Website 3; the identity of the foreign law enforcement agency that seized the computer servers (the "Seizing FLA"); the identity of the foreign law enforcement agency that notified United States law enforcement of the tips (the "Notifying FLA"); the substance of the notifications; any record of the investigative technique used by the Notifying FLA; any information addressing whether the Notifying FLA was part of a coordinated program with United States law enforcement; any information on the independent investigative work conducted by the Notifying FLA; and screenshots and other information concerning Website 2 and Website 3. (Id.).

In March 2021, the government provided some of the requested information, such as the actual names of Website 2 and Website 3, the identity of the Notifying FLA, documents purporting to be the notifications from the Notifying FLA, and a document from the Notifying FLA regarding its authorization for the collection of data. (Docket No. 80-2). The government did not disclose information concerning the investigative techniques employed the Notifying FLA, nor the identity of the Seizing FLA. (Id.).

In May and July 2021, the defendant supplemented his discovery request. (Docket No. 80-3). The defendant requested, *inter alia*, the name of the "operation" or "task force" investigating this case, the specific FBI ID and/or serial number assigned to this case, all correspondence constituting the tip from the Notifying FLA, copies of subpoenas sent to Internet service providers in response to the tip from the Notifying FLA, and information on the Notifying FLA's investigation. (Id.). Again, the government disclosed some, but not all, of the requested

3

information.  (Docket No. 80-4).  In July 2021, the defendant moved to compel discovery.  (Docket No. 80).  The Magistrate Judge to whom the discovery motion was referred denied the motion.  (Docket No. 106).  The defendant objects to the Magistrate Judge's decision.  (Docket No. 117).

### Legal Standard

In reviewing a timely-objected-to non-dispositive decision by a Magistrate Judge, the Court must determine whether any part of the decision is "clearly erroneous" or "contrary to law."  Fed. R. Crim. P. 59(a); *see also United States v. Garcia*, 983 F.2d 1160, 1166 (1st Cir. 1993).  The Court must accept the Magistrate Judge's factual findings absent "a strong, unyielding belief that a mistake has been made."  *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (quoting *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 152 (1st Cir. 1990)).  The Court reviews the Magistrate Judge's legal conclusions de novo.  *See in re HIPAA Subpoena*, 961 F.3d 59, 64 (1st Cir. 2020); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).  The Court reviews mixed questions of law and fact on a sliding scale: more fact intensive questions are subject to more deferential review; more law intensive questions are subject to less deferential review.  *See United States v. Aboshady*, 297 F. Supp. 3d 232, 235 (D. Mass. 2018).

### Discussion

The defendant requests discovery pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), Fed. R. Crim. P. 16(e), and L.R. 116.2.  Under *Brady*, the government must disclose any evidence in its possession that is "favorable to an accused" and "material either to guilt or to punishment."  373 U.S. at 87.  Under Fed. R. Crim. P. 16(e), the government must disclose any information that is (1) requested by the defendant, (2) in the government's possession, custody, or control, and (3) material to preparing the defense.  And under L.R. 116.2, the government must disclose "exculpatory information," which the rule defines as information that "tends to (1) cast doubt on

the defendant's guilt as to any essential element in any count in the indictment or information; (2) cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief, that might be subject to a motion to suppress or exclude . . . [or]; (3) cast doubt on the credibility or accuracy of any evidence that the government anticipates using in its case-in-chief."

The defendant bears the burden of demonstrating materiality. *See United States v. Goris*, 876 F.3d 40, 44 (1st Cir. 2017). "[A] showing of materiality requires 'some indication' that pretrial disclosure of the information sought 'would have enabled the defendant significantly to alter the quantum of proof in his favor.'" *Id.* at 45 (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)). "This significant alteration may take place in a myriad of ways, such as 'uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *Id.* (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). A district court does not abuse its discretion by denying a discovery request that is "grounded in a speculative theory." *Id*.

The defendant contends that the requested information is material to his defense for two overarching reasons: it may show that the investigation leading to his IP address violated the Fourth Amendment, *see United States v. Valdivia*, 680 F.3d 33, 51 (1st Cir. 2012), and/or that Agent Moynihan omitted material facts from her affidavit in support of the search warrant, *see Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The Court will address each contested discovery request in turn, following the numbering convention used by the defendant.

<u>Requests #3-4</u>

*#3-4: The identity of the FLA that seized the computer server hosting Websites 2 and 3, as referenced in ¶¶ 15-16 of the Affidavit.*

The defendant argues that the identity of the Seizing FLA is relevant to determining whether the United States and the FLAs were in a joint venture, such that the process through

5

which the defendant's IP address was identified is subject to Fourth Amendment scrutiny. *See Valdivia*, 680 F.3d at 51.  (Docket No. 117 at 7).  In his motion to compel, the defendant pointed to a history of collaboration between the United States and the Notifying FLA.  (Docket No. 80 at 4-7, 10-12).  The Magistrate Judge rejected the defendant's argument as speculative.  (Docket No. 106 at 6-7).  Reasoning that a history of collaboration between the United States and the Notifying FLA does not itself suggest a joint venture, the Magistrate Judge highlighted Agent Moynihan's averment that, in this case, the United States <u>did not</u> participate in the investigative work through the which the Notifying FLA identified the defendant's IP address.  (Id. at 7).  The Magistrate Judge further reasoned that, had the United States participated in the investigation, it is unlikely the United States would have needed to receive a tip from the Notifying FLA.  (Id.).

In objecting to the Magistrate Judge's decision, the defendant cites *United States v. Mitrovich*, 458 F. Supp. 3d 961, 963 (N.D. Ill. 2020), a case in which the United States received a tip from a foreign law enforcement agency after having assisted the agency with an earlier phase of the investigation.  As the defendant contends, *Mitrovich* rebuts part of the Magistrate Judge's reasoning.  The mere fact of a tip does not necessarily make it unlikely that the United States was involved in an earlier phase of the investigation.  Nonetheless, *Mitrovich* does little to further the defendant's argument that there existed a joint venture between the United States and the FLAs, and, as relevant to this discovery request, that the identity of the Seizing FLA might tip the balance on the issue.  A general history of collaboration between the United States and the Notifying FLA does not provide "some indication" that the identity of the Seizing FLA will enable the defendant to "significantly alter the quantum of proof in his favor."  *See Goris*, 876 F.3d at 46.  The Magistrate Judge did not err in denying this discovery request and concluding that the defendant's joint venture theory is speculative.

6

Requests #6-7, #16

*#6-7: The substance of the notification by the "FLA" to U.S. law enforcement regarding the identification of the IP address in this case, as referenced in ¶¶ 31-32 of the affidavit, including but not limited to:*
  *a. the author of the "FLA" notification;*
  *b. the identity of the "U.S. Law Enforcement" agency which received the notification and the recipient;*
  *c. the complete content of the notification, including information on tactics and/or techniques utilized by the "FLA" to determine the identity of the IP address accessing the website;*
  *d. any and all descriptions and/or identifications of Website 2 provided by the "FLA" in its tip to the US;*
  *e. the "further documentation" regarding Websites 2 and 3 provided by the FLA as reference in ¶¶ 31-32 of the affidavit.*

*#16 Any and all cover sheet(s), correspondence, and/or index list documenting the totality of "tip" and/or "notification" information provided by the FLA.*

The defendant contends that requests 6-7(a) and (b) are relevant to whether the United States and the FLAs were in a joint venture, as argued above. (Docket No. 117 at 10). As explained, the only indication of a joint venture is that the United States and the Notifying FLA have, in the past, worked together and shared information. Agent Moynihan averred, however, that United States law enforcement personnel did not participate in the investigative work through which the Notifying FLA identified the IP address information provided by the Notifying FLA. (Docket No. 80-6 at ¶ 33). Thus, the Magistrate Judge did not err in rejecting the defendant's joint venture argument as speculative.

The defendant argues that requests 6-7(c)-(e) and 16 are material to prosecuting a *Franks* motion. (Docket No. 117 at 10-12). The defendant contends that while the government has disclosed some documents from the Notifying FLA, the disclosed documents are non-responsive to this request and otherwise incomplete. (Id. at 10). Among the documents disclosed by the government are two reports identifying the defendant's IP address as having accessed child pornography content, and two reports concerning Website 2 and Website 3. (Docket No. 80-7;

80-9). In her affidavit, Agent Moynihan averred that the Notifying FLA alerted United States law enforcement that a specific IP address was used to access child pornography via websites named and described as Website 2 and Website 3, and that the Notifying FLA provided documentation naming the actual websites. (Docket No. 80-6 at ¶¶ 31-32). The defendant argues that the disclosed documents are not sufficiently linked, rendering potentially false Agent Moynihan's averment that United States law enforcement received a tip identifying the defendant's IP address as having accessed Website 2 and Website 3. (Docket No. 117 at 11).

The Magistrate Judge rejected this argument. (Docket No. 106 at 8-9). He reasoned that the disclosed documents, when read together, identify Website 2 and Website 3 as the child pornography websites accessed by the defendant's IP address, and that the defendant is not entitled to discovery to mount a *Franks* challenge without making a "substantial preliminary showing" of a potentially false or reckless statement. (Id. at 9). Indeed, under *Franks*, where a defendant "makes a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. at 156-57. Several courts have concluded that a defendant seeking discovery to mount a *Franks* challenge must make a similar "substantial preliminary showing." *See United States v. Long*, 774 F.3d 653, 661 (10th Cir. 2014); *United States v. Messalas*, 2020 WL 1666162, at *11 (E.D.N.Y. Apr. 4, 2020); *United States v. Harding*, 273 F. Supp. 24 411, 430 (S.D.N.Y. 2003).

In objecting to the Magistrate Judge's decision, the defendant argues that the Magistrate Judge applied the wrong standard. (Docket No. 117 at 11). The defendant cites *United States v. Jordan*, where a court in this district -- in <u>denying</u> a motion for discovery to mount a *Franks*

challenge -- arguably described a standard more lenient than the one outlined in *Franks*. *See* 2010 WL 625280, at *3-4 (D. Mass. Feb. 23, 2010) (noting that discovery should await "an initial showing" that there are inaccuracies in the affidavit). That one court in this district arguably described a more lenient standard, however, does not render the Magistrate Judge's decision "contrary to law," so understood as when a court "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States v. Facteau*, 2016 WL 4445741, at *3 (D. Mass. Aug. 22, 2016). Indeed, in the Court's view, the Magistrate Judge applied the proper standard.

The defendant further argues that under either standard, he has sufficiently shown that there are material inaccuracies and omissions in Agent Moynihan's affidavit. (Docket No. 117 at 12). The defendant contends that Agent Moynihan added language to, and omitted information from, the affidavit to make it appear that United States law enforcement had more information on the defendant's IP address than it did. (Id.). It is not entirely clear from the defendant's briefing, however, how this argument relates to the defendant's request for discovery concerning the Notifying FLA's tip. In any event, while certain details were excluded from the affidavit -- such as the fact that the Notifying FLA was not the same as the Seizing FLA -- Agent Moynihan expressly averred that she included only facts she believed were necessary to establish probable cause. (Docket No. 106 at 9). The Magistrate Judge did not err in concluding that the defendant was not entitled to this discovery.

Request #8

*#8: Any record of the investigative technique(s) utilized by the FLA with respects to the "notification(s)" described in ¶¶ 31-33 of the affidavit.*

In his motion to compel, the defendant argued that the investigative technique used to identify his IP address might shock the judicial conscience, such that it violates the Fourth Amendment. (Docket No. 80 at 20). The Magistrate Judge rejected this argument as speculative.

(Docket No. 106 at 6-7).  In objecting to the Magistrate Judge's decision, the defendant submits an affidavit filed in another case by Professor Steven Murdoch, a professor of security engineering at University College London.  (Docket No. 117-14).  Professor Murdoch, who has extensive experience with the Tor network, avers that the only two ways properly to identify a user's IP address on the Tor network are to use an error-prone traffic analysis or to implement a Network Investigative Technique ("NIT") which interferes with the target user's computer.  (Id. at ¶ 23).

This affidavit was not presented to the Magistrate Judge, making it difficult to conclude whether the Magistrate Judge's decision was "clearly erroneous" for not having considered it.  *Cf. United States v. Mendoza-Maisonet*, 962 F.3d 1, 16-17 (1st Cir. 2020) (an argument presented for the first time in objection to the magistrate judge's decision is waived).

Nonetheless, citing to *United States v. Anzalone*, 208 F. Supp. 3d 358, 366 (D. Mass. 2016), the defendant argues that the deployment of an NIT in this case would constitute an unlawful warrantless search.  *Anzalone*, however, concerned the deployment of an NIT by United States law enforcement, not foreign law enforcement.  To bring a foreign law enforcement search within the ambit of the Fourth Amendment, it is not enough that the search violated United States law; it must have shocked the judicial conscience.  *See Valdivia*, 680 F.3d at 51.  "Circumstances that will shock the conscience are limited to conduct that 'not only violates U.S. notions of due process, but also violates fundamental international norms of decency.'"  *United States v. Mitro*, 880 F.2d 1480, 1483-84 (1st Cir. 1989) (quoting Saltzburg, *The Reach of the Bill of Rights Beyond the Terra Firma of the United States*, 20 Va. J. Int'l. L. 741, 775 (1980)).  The defendant has not explained why a foreign law enforcement agency's deployment of an NIT would shock the judicial conscience.  *Cf. United States v. Anzalone*, 923 F.3d 1, 5-6 (1st Cir. 2019) (concluding that the FBI's Playpen investigation did not shock the conscience).

The defendant also argues that the potential use of an NIT raises questions about the veracity of Agent Moynihan's affidavit. (Docket No. 117 at 14). Contrary to the defendant's framing, however, Agent Moynihan did not represent that no computer in the United States had been searched. (Id.). Rather, she averred that the Notifying FLA "advised U.S. law enforcement that [the Notifying FLA] had not interfered with, accessed, searched, or seized any data from any computer in the United States in order to obtain that IP address information." (Docket No. 80-6 at ¶ 33). Moreover, Professor Murdoch's affidavit suggests one must "control" a subject website on the Tor network to implement an NIT. (Docket No. 117-14 at ¶ 28). Thus, to the extent an NIT was used in this case, Professor Murdoch's affidavit suggests that it was implemented by the Seizing FLA, not the Notifying FLA.

The defendant further argues that the potential use of the error-prone traffic analysis technique calls into question the extent to which the search warrant was supported by probable cause. (Docket No. 117 at 14). The theory is that, based on Professor Murdoch's affidavit, one of the FLAs might have employed an error-prone investigative technique to identify the defendant's IP address, that Agent Moynihan knew that the FLA(s) employed this error-prone investigative technique, and that Agent Moynihan intentionally or reckless omitted this information from the affidavit. This argument is speculative. Indeed, perhaps fatal to the defendant's request for this information, the government has represented that it does not have information on how FLAs uncovered the defendant's IP address. (Docket No. 151 at 20-22). Information is subject to disclosure only if it is in the government's possession, custody, or control. *See Lavallee v. Coplan*, 374 F.3d 41, 43 (1st Cir. 2004); Fed. R. Crim. P. 16(e); L.R. 116.1.

Finally, the defendant argues that investigative technique is relevant to determining whether the United States and the FLAs were in a joint venture. (Docket No. 117 at 14-15). For

11

the reasons stated above, the Magistrate Judge did not err in rejecting the defendant's joint venture argument as speculative. Accordingly, the Magistrate Judge did not err in denying this request.

### Requests #9 and #10

*#9: Any information, document, memorandum, and/or agreement addressing whether the FLA provided the information regarding the IP address in this case as part of a coordinated initiative or program with US law enforcement.*

*#10: Complete copies of the "advisements" by the FLA to U.S. law enforcement regarding the "independent investigation" and "investigative work through which the FLA identified the IP address information" in this case, as referenced in ¶ 33 of the affidavit.*

The defendant argues that this information is material to whether the United States and the FLAs were in a joint venture. (Docket No. 117 at 15). For the reasons stated, the Magistrate Judge did not err in rejecting the defendant's joint venture argument as speculative.

### Requests #13 and #14

*#13: The name of the "Operation," "Task Force," "Initiative," and/or organizing group assigned by the FLA to the investigation in this case, and the name of "Operation," "Task Force," "Initiative," and/or organizing group assigned by the FBI to the investigation in this case, if different.*

*#14: The specific case FBI ID and/or serial number assigned to the Defendant's case.*

The defendant argues that this information is relevant to determining the scope of the law enforcement operation, the nature of any joint venture, and the roles of the various law enforcement agencies and actors. (Docket No. 117 at 16). As mentioned, the Magistrate Judge rejected the defendant's joint venture argument as speculative. (Docket No. 106 at 10). The Magistrate Judge further rejected the argument that this information is material to the defendant's defense. (Id.). In objecting to the Magistrate Judge's decision, the defendant asserts that the Magistrate Judge ignored the fact that the tip documents already disclosed from the Notifying FLA appear to be part of a larger operation. (Docket No. 117 at 16). The defendant further points to affidavits and search warrants in other cases that are similar to the affidavit and search warrant here, suggesting that the

scope of the operation was larger than just the defendant's case. (Docket No. 140 at 1-3). The defendant has not identified an inaccuracy or misleading omission in Agent Moynihan's affidavit, however. While Agent Moynihan's affidavit only discusses the defendant's case, the affidavit does not suggest, one way or another, whether United States law enforcement received other tips from the Notifying FLA. It is unclear, moreover, how the name and numbers assigned to the case are exculpatory, such that the Court can conclude that the Magistrate Judge's decision was clearly erroneous or contrary to law.

Request #15

*#15 Any record of action taken in response to the FLA notification by U.S. Law Enforcement agencies, including but not limited to copies of subpoenas and supporting materials (including spreadsheets, charts, lists, and/or other documents) sent to internet service providers, as referenced in ¶¶ 3 and 39 of the affidavit; and copies of returns to such subpoenas.*

In his motion to compel, the defendant acknowledged that the government disclosed a half-page document concerning his IP address and Verizon customer information. (Docket No. 80 at 23). That document, however, covers a ten-month period, not just the date identified in Agent Moynihan's affidavit. (Docket No. 80-11). The defendant thus argued that the ten-month period conflicts with Agent Moynihan's averment that "an administrative subpoena was issued to Verizon Fios for information related to [the identified IP address] on the following dates and times: May 12, 2019 at 19:10:51 UTC and May 12, 2019 at 19:27:24 UTC, respectively." (Docket No. 80-6 at ¶ 39). The defendant contended that this discrepancy bore on Agent Moynihan's truthfulness, such that the government should be required to disclose complete copies of subpoenas and supporting materials. (Docket No. 80 at 23). The Magistrate Judge rejected the defendant's argument, finding that the discrepancy was "not significant." (Docket No. 106 at 11). In objecting to the Magistrate Judge's decision, the defendant argues that the discrepancy highlights a misstatement in the affidavit that relates to the only link between the alleged criminal activity and

the defendant's home.  (Docket No. 117 at 17).  The Court cannot conclude that the Magistrate Judge's decision was clearly erroneous or contrary to law.

Request #17

*#17 With respect to the notification by the FLA to U.S. law enforcement:*
  *a. whether, and how, the FLA determined that the defendant's IP address accessed and/or visited a specific portion of Websites 2 and/or 3, and, if so, what specific portion of Websites 2 and/or 3 was accessed and/or visited;*
  *b. the number of tips provided by the FLA to U.S. law enforcement pursuant to investigation . . .  referenced in [the Notifying FLA's] September 16, 2019 letter;*
  *c. the number of websites identified by the FLA to U.S. law enforcement pursuant to its investigation [];*
  *d. the number of IP addresses identified by the FLA to U.S. law enforcement pursuant to its investigation [].*

The defendant argues that this information is relevant to whether the United States and the FLAs were in a joint venture, to the scope and reliability of the investigation, and to the specificity of the Notifying FLA's tip.  (Docket No. 117 at 18).  The Magistrate Judge did not err in rejecting the defendant's joint venture argument, as discussed above.  The Magistrate Judge also did not err in concluding that the defendant had not made the requisite showing to warrant discovery to mount a *Franks* challenge.  (Docket No. 106 at 11).

## Conclusion

For the reasons set forth above, the defendant's objection to the Magistrate Judge's decision is ***overruled***.


**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
