UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 20-cr-40036-TSH |
| | ) | |
| VINCENT KIEJZO, | ) | |
| | ) | |
| Defendant | ) | |

---

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

---

For the reasons discussed in greater detail below, the government respectfully requests that this Court DENY the defendant's Motion to Suppress (filed under seal on June 1, 2022; hereinafter, "Mot.").

I.      Relevant Background and Procedural Posture

The defendant stands charged by indictment in the above-captioned docket with one count of possession of child pornography on September 9, 2020, in violation of 18 U.S.C. §2252A(a)(5)(B).   On September 9, 2020, agents from Homelands Security Investigations executed a search warrant at the defendant's home.  (Exhibit 1, ¶ 5).  In brief, the affidavit in support of that search warrant stated that the affiant, a Special Agent with Homeland Security Investigations, had received information from a foreign law enforcement agency (FLA) that an IP registered to the defendant's home had accessed two TOR websites (Website 2 and Website 3) that had the primary function of facilitating the sharing of images and videos of sexual exploitation of minors.  In a bedroom identified as the defendant's, agents located a USB drive plugged into a television on the bedroom wall.  (Id. ¶8).  Agents located approximately 6,000 video files on that

USB drive most of which primarily depicted minor males and females engaged in sexually explicit conduct. (Id. ¶10)  The defendant was present at the home, waived his *Miranda* rights, and made several incriminating statements to agents, including that the USB drive belonged to him and that he was aware that it contained child pornography. (Id., ¶¶6, 12).  The defendant was arrested and charged by complaint with the above-referenced offenses on that same date.  (Doc 1).   He was subsequently indicted for the same offenses on October 1, 2020, (Docket No.  13), and arraigned on October 2, 2020  (Docket No. 18).  There are no charges related to Website 2 or Website 3.

In July 2021, the defendant filed a motion to compel discovery, claiming that the items he requested would demonstrate that Agent Moynihan omitted material facts from her affidavit in support of the search warrant.  That motion was denied by Magistrate Judge David Hennessy. (Docket No. 106).  The defendant subsequently filed an objection to that ruling. The objections were overruled by this Court. (Docket No.  157.)

The defendant filed the instant motion, essentially laying out two grounds for relief.  The defendant asserts that the search warrant affidavit was not supported by probable cause because (a) the affidavit did not establish the basis of knowledge nor corroborate the FLA tip and (b) the information was stale. Mot. at 9-14.   In addition he claims that the affiant made material misstatements and omissions which entitle the defendant to a *Franks* hearing.   The defendant's motion should be denied because neither ground has merit.

The Search Warrant Was Supported by Probable Cause

Probable cause for a search warrant exists "where information in the affidavit reveals a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Syphers*, 426 F.3d 461, 464 (1st Cir. 2005) (internal quotations omitted).   Courts reviewing the sufficiency of an affidavit engage in a totality of the circumstances analysis, considering affidavits "in a common sense manner."  *Syphers*, 426 F.3d at 465 (internal quotations

omitted).  "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."  *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983) (internal quotations omitted).  A reviewing court must "give significant deference to the magistrate judge's initial evaluation" and may reverse only if there is no such substantial basis.  *United States v. Cordero-Rosario*, 786 F.3d 64, 69 (1st Cir. 2015).

The ultimate question at the center of the totality of the circumstances analysis is whether the affidavit demonstrated a fair probability that evidence of a crime would be found pursuant to the warrant.  *See Illinois v Gates*, 462 U.S. at 238.  *Gates* does not define "fair probability;" "therefore, it appears that there is no threshold evidentiary standard which establishes fair probability that criminal evidence will be located in a particular area."  *See* Peter J. Kocoras, 42 DePaul Law Review 1413, 1427 n.103 (1993).  However, the First Circuit has made clear that "[t]he standard of probable cause requires a probability, not a prima facie showing, of criminal activity."  *United States v. Burke*, 999 F.2d 596, 599 (1st Cir. 1993) (*citing United States v. Ciampa*, 793 F.2d 19, 22 (1st Cir. 1986)).  *See also United States v. Mitro*, 880 F.2d 1480, 1485 n.7 (1st Cir. 1989).

Probable cause is a "practical, nontechnical conception," *Gates*, 462 U.S. at 231 (citing *Brinegar v. United States*, 338 U.S. 160, 176 (1949)), and as such, "hypertechnical readings should be avoided." *Syphers* at 465 (citing *United States v. Baldyga*, 233 F.3d 674 at 683 (1st Cir. 2000). Inferences are permissible, *United States v. Falon*, 959 F.2d 1143, 1147 (1st Cir. 1992) (citing *United States v. Hershenow*, 680 F.2d 847, 852 (1st Cir. 1982)), but wholly conclusory statements in an affidavit are insufficient, *see Gates,* 462 U.S. at 239.  In sum, the totality of the circumstances analysis is quite flexible and permits the issuing magistrate to make a common-sense judgment.

To establish probable cause, the facts presented in the affidavit "need only warrant a man of reasonable caution to believe that the evidence of a crime will be found."  *United States v. Feliz*,

3

182 F.3d 82, 86 (1st Cir. 1999) (internal quotation omitted).  The fact that this is a reasonable person standard highlights that "[t]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citing *Gates*, 462 U.S. at 231).  Again, the probable cause need not be sufficient to prove guilt in a criminal trial.  *See Brinegar v. United States*, 338 U.S. 160, 173 (1949).

II.     The Affidavit Establishes Probable Cause For The Issuance Of The Warrant

        A.      The FLA Tip Was Sufficient And Reliable For The Finding Of Probable Cause.

        The defendant first argues that the tip from the FLA was insufficient to establish probable cause, because the affiant failed to establish the FLA's basis of knowledge and made no effort to corroborate the tip.  Mot. at 6-9.  The thrust of this argument, however, is flawed; it presumes that the FLA's tip should be assessed in the same light as a tip from a confidential informant.  *See*, *e.g.*, *United States v. Gifford*, 727 F.3d 92 (1st Cir. 2013) (citing *United States v. Tiem Trinh*, 665 F.3d 1 (1st Cir. 2011)).  In advancing this argument, the defendant overlooks the general principle that information in search warrant affidavits from reliable informants, like law enforcement agencies, is entitled to considerable credence.

        The affiant's (and Magistrate Judge Hennessy's) reliance on hearsay was permissible in these circumstances.  The FLA is a law enforcement agency that is well-known by, and has a long history of sharing information with, the United States.  Mot. Ex. 1 , ¶¶ 31-34.  "There is no objection to hearsay, if the informant is shown to be reliable and there is a disclosed, reliable, basis for his information."  *United States v. Asselin*, 775 F.2d 445, 446 (1st Cir. 1985) (citing *Aguilar v. Texas*, 378 U.S. 108, 114 (1964), *Jones v. United States*, 362 U.S. 257, 269 (1960)).  Courts routinely find that tips provided by one law enforcement agency to another are reliable.  *United States v. O'Connell*, 19-cr-00017-GZS, 2019 WL 2396560, at *5 n. 7 (D. Me. June 6,

2019) (citing *United States v. Benoit,* 730 F.3d 280, 285 (3d Cir. 2013) (holding that Coast Guard officers reasonably relied on tip from foreign law enforcement agency where that agency was known to officers and repeat player in drug trafficking prevention); *United States v. Winters*, 491 F.3d 918, 922 (8th Cir. 2007) (concluding that "significantly corroborated" tip from law enforcement officer to state narcotics agents was sufficiently reliable and including it in reasonable suspicion calculus); *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) (incorporating tip from one DEA office to another in group of "factors to be aggregated" in making reasonable suspicion determination); *United States v. Troka*, 987 F.2d 472, 474 (7th Cir. 1993) (finding reasonable suspicion based in part on tip from sister police department since that "police department was a reliable source and because later information provided further corroboration for the tip")).   The facts of this case do not, contrary to the defendant's assertion, "mirror" those in *Gifford*, where law enforcement relied on a tip from a civilian confidential informant.   Given the FLA's history of providing reliable tips to U.S. law enforcement—as a respected law enforcement agency itself— Magistrate Judge Hennessy reasonably relied on the FLA tip described in the affidavit without the need to establish the basis of knowledge for the tip or to attain further corroboration by HSI to demonstrate that the information was reliable and trustworthy.   Multiple District Courts, including this District, have considered and rejected the defendant's line of argument on similar facts.   *See* <u>United States v. Bateman</u>, 20-cr-10012-IT (D. M.A) ("The Magistrate Judge reasonably relied on the foreign agency's tip in concluding that probable cause existed to issue the search warrant because a tip from one federal law enforcement agency to another implies a degree of expertise and a shared purpose in stopping illegal activity and the working relationship between the United States and the FLA bolsters the credibility of the information since the FLA's reputation can be assessed and it can be held responsible if its allegations turn out to be fabricated.") Docket 117 at 6, internal quotations and

citations omitted.  *See also United States v. Sanders,* 20-cr-00143-TSE (E.D.V.A.) ("given the FLA's history of providing reliable tips to the FBI and the FLA's status as a respected foreign law enforcement agency, it was reasonable for the Magistrate Judge to rely on the FLA tip without further corroboration by the FBI).  *Id.,* Docket 122 at 8-9; *United States v. Delaney*, 20-cr-00335-TJM (N.D.N.Y.) (Sufficient basis for the Magistrate Judge to deem a hearsay tip reliable when it was from a known foreign law enforcement agency with which U.S. law enforcement agencies had a long history of cooperation in fighting child abuse crimes and the FLA had provided reliable information in the past in similar criminal prosecutions.) Docket. 65 at 30.   The motion must therefore be denied on this basis.

      B.     The Information Contained In The Affidavit Was Not Stale

The defendant next argues that the information contained in the affidavit was too stale to justify a warrant because sixteen months had passed between the time the IP address assigned to the defendant's home accessed Websites 2 and 3 in May 2019 and the application for the search warrant in September 2020.   This argument, too, ignores a body of well-established caselaw that directly undercuts his position. [W]hen evaluating a claim of staleness, [courts] do not measure the timeliness of information simply by counting the number of days that have elapsed." *United States v. Morales- Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008).  Rather, the court must "consider[ ] various factors, including 'the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information' in assessing the information's ripeness." *United States v. Tiem Trinh*, 665 F.3d 1, 13 (1st Cir. 2011), quoting *Morales-Aldahondo*, 524 F.3d at 119.   In *Morales-Aldahondo*, the Court found that a search warrant was not stale despite the passage of three years since law enforcement acquired information that the defendant had accessed child pornography. Id. The Court pointed to information provided by the government that "customers of child pornography sites do not

quickly dispose of their cache. This is not a new revelation." Id., *citing United States v. Irving*, 452 F.3d 110 (2d Cir. 2006) (no staleness after two years); *United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005) (no staleness after five years); *United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (five year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology").  Based upon the affidavit and established caselaw, the Magistrate Judge was presented with both the disclosed timespan along with the special characteristics of individuals who seek out child pornography. Mot. Exhibit 1 ¶¶48-56.He was entitled to credit that and there is no error in his finding of probable cause.

The defendant suggests that, because the affidavit did not say what specific material was accessed during the connection to Website 2 and 3, there is insufficient evidence that he intended to view the site.  His reliance on *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015), is misplaced, given the distinctions between the facts there and the facts here.  In *Raymonda*, the defendant opened, without clicking on any links, one to three pages of an open-web site that housed thumbnails of child pornography images.  In that case, the defendant's behavior was consistent with "an innocent user inadvertently stumbling upon a child pornography website."  *Id.* at 117.  In fact, a law enforcement officer coincidentally encountered the same site link when he was  navigating another website.   Conversely, the affidavit in this  case  establishes  that  the defendant did not merely "stumble" upon Website 2 or 3.  The affidavit contains detailed allegations regarding the steps that an individual would necessarily undertake to access Website 2 and 3- the user had to download and install TOR software, access the TOR network, locate the web address for Website 2 (an address of at least 16 and as many as 56 algorithm-generated characters), and then connect to Website 2 via TOR.   Separately, he would have had to locate the web address for Website 3, again a 16 or 56 character algorithm-

generated address, enter it, and access via TOR.  Mot. Ex. 1, ¶¶8, 12-14, 35-37.  The affidavit further describes the type of particularly violent content hosted on Websites 2 and 3, suggesting that someone who visited the site was not innocently surfing the internet. Mot. Ex. 1, ¶¶15-29. This distinction is crucial, where, in an assessment of whether there was sufficient probable cause for a warrant to issue, the affidavit need only set forth facts to show a fair probability that evidence, fruits, or instrumentalities of the target offenses would be found at the target residence.   Here, the affidavit does just that. Even though the affidavit does not state exactly what Kiejzo allegedly accessed on the website, it is reasonable to assume that an individual who visits a site that announces, "Welcome abusers and abusees and those that enjoy watching. This website was created to host videos, photos and discussions of 18 (twinks) and younger of Hurtcore materials (videos and pictures) as well as discussion of such," would be likely to seek out child pornography to view and/or download. Mot. Ex. 1, ¶¶17.  The motion must be denied on these grounds.

III.     The Defendant's Request for a Frank's Hearing Must Be Denied Because There Were No Material Omissions Or Misstatements

A.     Special Agent Moynihan Accurately Relayed the Tip as Received from the FLA

The defendant claims that, by failing to repeat the tip from the FLA verbatim, the affidavit misled the magistrate.  This claim is wholly without merit.  There is no requirement that an affiant produce a verbatim copy of a tip.  Special Agent Moynihan's affidavit accurately consolidated the documents that were provided by the FLA without providing the actual names of the websites. There can be no serious argument that a magistrate would not understand that access via the Internet would be anything other than "via a website."  If the Court humors the defendant and removes the affiant's summary and replaces it with the exact language of the tip from the FLA,

probable cause would not be affected.  Paragraph 31 could be omitted and the following substituted:

¶31(a) "96.230.213.63 was used to access online child sexual abuse and exploitation material, with an explicit focus on the facilitation of sharing child abuse material (images, links and videos), emphasis on BDSM, hurtcore, gore and death-related material including that of children.  Users were required to create an account (username and password) in order to access the majority of the material."  Mot. Ex. 3

¶31(b) "The following named images/videos were shared online in the TOR Hidden Service [Website 2]… This site had an explicit focus on the facilitation of sharing child abuse material (images, links and videos), emphasis on BDSM, hurtcore, gore and death-related material including that of children.  Users were required to create an account (username and password) in order to access the majority of the material." Mot. Ex. 5

An identical conclusion would be reached by the Magistrate.  The efforts to reach Website 2 would be the same, and the Magistrate would be reasonable in concluding that a person who undertook those steps not once but twice within twenty minutes was actively seeking access to material depicting the sexual exploitation of minors.  Sections 2252A(a)(5)(B) and (b)(2) prohibit a person from "knowingly accessing with the intent to view, or attempting to access with the intent to view, child pornography.  The affiant did not incorrectly state that there was evidence that the defendant- or the user of his IP address-downloaded any images, nor is that a finding necessary for the issuance of the requested warrant.

B.      Special Agent Moynihan's Explanation of TOR was Accurate

The defendant provides, as attachment 9, an affidavit provided by Federal Public Defender Office Investigator Gerald R. Grant, Jr. ("Grant Affidavit"), who opines that "So long as the user is running and using a Tor Browser…it is possible for a·user to easily find a list of links to hidden

Tor websites, click on a link, and be taken to that website without being aware of what content it contains." Mot. Ex. 9 ¶5-6.  This is not in contrast to anything that Special Agent Moynihan stated, much less revealing of a material misrepresentation that would change the probable cause analysis. She did not say that it was impossible, but stated, "it is *much more difficult* to perform a Google-type search of hidden service websites than it is to search open Internet website for particular content of interest.  Users interested in accessing child exploitation material (or in advertising child exploitation and pornography websites they operate) therefore keep, maintain, and use directory sites that advertise the web addresses of hidden services that contain child exploitation related content." Mot. Ex. 1 ¶ 14.   Nothing in the Grant Affidavit casts doubt upon that. The defendant's reliance on this affidavit does not assist him any further than the defendant's in that case; that is, it has no bearing on the veracity or accuracy of the information relayed to the Magistrate Judge in the affidavit. Mot. Ex. 13; see United States v. Stuart, 21-cr-00007-LJV-JJM (W.D.N.Y.), Doc. 44 at 5 and n.2 ("the Grant affidavit does not change what [the magistrate judge] had before him when he issued the search warrant, nor does it cause this Court to doubt the veracity of the [search warrant] affidavit").

C.      There Is No Material Omission or Misrepresentation Regarding The Identification Of The Defendant's IP Address

The defendant's remaining arguments appear to be a repeat of his arguments from the motion to compel discovery, already rejected by this Court. Docket 157.  Special Agent Moynihan did not describe the method used by the FLA, and stated in discovery that the methodology is not known to the United States. Nonetheless, the Defendant continues rejects the possibility that his IP address could have been identified by any method other than a warrantless Network Investigative Technique (NIT), relying on an affidavit filed in a separate prosecution that has not been adopted by any court.   He then maintains that either a FLA acted as agent for the United

States in deploying a warrantless NIT or that the actions undertaken by the FLA shocks the judicial conscience, as he must in order to have a grounds to seek suppression. "Ordinarily, the Fourth Amendment's exclusionary rule does not apply to foreign searches and seizures, for 'the actions of an American court are unlikely to influence the conduct of foreign police.'" *See United States v. Valdivia*, 680 F.3d 33, 52 (1st Cir. 2012) (citing *United States v. LaChapelle,* 869 F.2d 488, 490–91 (9th Cir.1989)) for proposition that joint venture exception did not apply where the foreign official who conducted the foreign investigation "stated explicitly ... that American agents were not involved in initiating or controlling the contested (foreign) wiretap"). "There are, however, two well-established exceptions to this rule: (1) where the conduct of foreign police shocks the judicial conscience, or (2) where American agents participated in the foreign search, or the foreign officers acted as agents for their American counterparts." Id. (quoting *United States v. Mitro*, 880 F.2d 1480, 1482 (1st Cir. 1989)).

The defendant claims that "the use of a NIT (which has not been established) would reveal a substantial misrepresentation in the affidavit, which relies on Agent Moynihan's assurance that no computer in the United States had been searched. The deployment of a NIT is an unlawful warrantless search." Mot. p. 24. The defendant misstates both the affidavit and the law. Special Agent Moynihan stated, "FLA advised U.S. law enforcement that it has obtained that information through independent investigation that was lawfully authorized in FLA's country pursuant to its national laws. FLA further advised U.S. law enforcement that FLA had not interfered with, access, searched, or seized any data from any computer in the United States in order to obtain that IP address information." Mot. Ex. 1 ¶33. The defendant has offered no persuasive reason to doubt the FLA's statement that it did not interfere with a computer in the United States, nor reason to believe that Special Agent Moynihan included that statement in her affidavit, knowing it to be false. This Court has already considered, and rejected, the defendant's claim that he has made a

substantial preliminary showing that the investigative technique used to identify his IP address might shock the judicial conscience such that it violates the Fourth Amendment.  Docket 157, p. 9-11.

Having failed to establish that the actions of a FLA shock the judicial conscience, he insist that the United States must have worked in a joint venture with the FLA. The only justification he offers for any of this is the fact that multiple people across the country appear to have been prosecuted based upon tips by the same FLA.  Rather than supporting the defendant's position, this is entirely consistent with Special Agent Moynihan's statement that "[she is] aware that tips provided by FLA regarding IP addresses that FLA advised were associated with access to Tor network child exploitation-related web and chat sites have (1) led to the identification and arrest of a U.S.-based child pornography producer and hands-on offender, and the identification and rescue of multiple U.S. children subject to that offender's ongoing abuse; (2) led to the seizure of evidence of child pornography trafficking and possession; and (3) been determined through further investigation to be related to U.S. targets that U.S. law enforcement investigation had independently determined were associated with child pornography trafficking and possession." Mot. Ex. 1. ¶ 34.   This Court has already joined the Magistrate Judge in concluding that the

defendant's joint venture theory is speculative, and nothing added to this motion to suppress changes that analysis.[1]

The government reincorporates all of its previously pled arguments herein and asserts that none of the information included in the defendant's motion to suppress justify either the granting of a Frank's hearing or suppression.  Accordingly, his Motion should be denied.

Respectfully Submitted,

RACHEL S. ROLLINS
United States Attorney

By:     */s/ Kristen M. Noto*
Kristen M. Noto
Assistant United States Attorney
District of Massachusetts
595 Main Street
Worcester, MA 01608

---

[1] Indeed, the Government cannot find a single instance where a Court has agreed with the defendant's position in of the cases the Defendant identified arising out of the same set of tips from the FLA.  *See See United States v. Bateman, 20-cr-100120-IT (D. MA)*; *United States v. Sanders,* 20-cr-00143-TSE (E.D.V.A.)

CERTIFICATE OF SERVICE


I, Kristen M. Noto , hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic filing.