UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Docket No. 20-cr-40036-TSH |
| v. ) | |
| ) | ***LEAVE TO FILE UNDER SEAL*** |
| ) | ***AND TO FILE REDACTED*** |
| VINCENT KIEJZO ) | ***MEMORANDUM REQUESTED ON*** |
| ) | ***9/23/22*** |
| ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS**

Defendant, Vincent Kiejzo, respectfully submits this reply to the government's Opposition to Defendant's Motion to Suppress. In its response, the government relies on flawed arguments, ignores the evidence that supports Mr. Kiejzo's motion, and dismisses the defense's claims without engaging with the substance of those claims. For the reasons outlined in Mr. Kiejzo's original motion, and those detailed below, the Court should grant his motion to suppress and his motion for a *Franks* hearing.

**I.  The Tip was Insufficient to Establish Probable Cause**

The government argues that the tip from the FLA (now known to be the [REDACTED] [REDACTED]) was sufficient to establish probable cause. Govt. Response, 4-6. In support, the government argues that it was reasonable for the Magistrate Judge to presume that the tip from the [REDACTED] was reliable for primarily two reasons. First, the government states that courts "routinely find that tips provided by one law enforcement agency to another are reliable." *Id*. at 4. Second, it argues that the affiant sufficiently established the tip's reliability by noting that the FLA was well known-by, and had a long history of sharing information with, the United States. *Id*. at 4-5. Both of these arguments are flawed, and do not support a finding of probable cause.

1

The first argument – that courts generally find tips from law enforcement agencies are reliable – is misleading. While courts do routinely find that tips provided by one law enforcement agency to another are reliable, those findings are in the specific context of whether there was **reasonable suspicion** to support law enforcement's actions. The cases the government cites exemplify this rule: in each, the issue before the court was whether there was reasonable suspicion for a seizure, not whether there was **probable cause** for a search warrant. *See e.g., United States v. O'Connell*, 19-cr-00017-GZS, 2019 WL 2396560, at *5 (D. Me. June 6, 2019) (noting it was reasonable for Maine State Trooper to rely on tip from Maine DEA agent when stopping vehicle); *United States v. Benoit,* 730 F.3d 280, 285 (3d Cir. 2013) (finding there was reasonable suspicion to stop defendant's boat in international waters where U.S. Coast Guard received tip from Grenadian authorities); *United States v. Winters*, 491 F.3d 918, 922 (8th Cir. 2007) (vehicle stop supported by reasonable suspicion in part due to tip from one officer to another); *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) (in determining that vehicle stop was valid, tip from one DEA agent to another was one factor to be aggregated in the reasonable suspicion analysis); *United States v. Troka*, 987 F.2d 472, 474 (7th Cir. 1993) (*Terry* stop supported by reasonable suspicion where sheriff's department received tip from police department in the same State).

None of the cases cited by the government hold that an uncorroborated tip from a foreign law enforcement agency is sufficient to establish probable cause for a search warrant. In the context of a warrant, the proper analysis for assessing the reliability of a tip is instead the one laid out in *United States v. Gifford*, 727 F.3d 92, 98-99 (1st Cir. 2013) and *United States v. Tiem Trinh*, 665 F.3d 1, 10 (1st Cir. 2011). Under that standard (outlined in Defendant's Motion to Suppress at 8), the affidavit submitted in support of the search warrant failed to establish a fair probability that evidence of a crime would be found in Mr. Kiejzo's home.

Rather than address the merits of this argument, the government asks the Court to hold that an uncorroborated tip from an unidentified FLA is sufficient to support probable cause for a search warrant even where the affidavit does not establish the basis for that tip. It does so despite the complete lack of information that the information supporting the tip was obtained through lawful means. It does so without any corroboration that the tip was even true. This Court has no way of knowing whether the basis for the FLA's tip was reliable or even valid.[1] Applying the factors laid out by the First Circuit, the tip was not sufficient to establish probable cause.

The second flaw in the government's probable cause analysis is that it ignores the fact that there was not one, but at least two FLAs involved in the investigation that led to the tip. As Mr. Kiejzo has repeatedly stated, the affiant averred that the tip-giving FLA was from a country with an established rule of law and a history of sharing criminal investigation information with U.S. law enforcement. No such assurances were made about the second FLA, nor was there any mention or disclosure of the existence of a second FLA. There are no facts in the affidavit that address or establish the reliability, trustworthiness, or history of prior tips from the FLA that seized the server. Without any information about that second FLA, including its reliability, its trustworthiness, and its role in the gathering of information that led to the tip from the ▌, the Magistrate could not have found there was probable cause.

In sum, the factors laid out by the First Circuit in *Tiem Trinh*, 665 F.3d at 10 (and cited by the First Circuit again in *Gifford*, 727 F.3d at 99), are the factors that this Court should apply here. Those factors do not favor a finding that the affidavit established probable cause. The tip was insufficient and Mr. Kiejzo's motion should be granted on that basis.

---

[1] The government has refused to disclose any information about the warrants that the ▌ obtained to gather the alleged information about the IP address. The government has access to this information but has withheld it despite requests from the defense.

**II. Mr. Kiejzo has Established that He is Entitled to a Franks Hearing.**

The government claims that there are no material omissions or misstatements in the affidavit and that Mr. Kiejzo is therefore not entitled to a *Franks* hearing. Here, the government mischaracterizes its own evidence and ignores one of Mr. Kiejzo's key arguments.

In its response, the government argues that Special Agent Moynihan accurately relayed the tip that it received from the FLA. However, the government fails to address Mr. Kiejzo's key argument supporting a *Franks* hearing, which is that the actual tip from the ▮▮▮ conveyed only that the IP address in question was used to *access the websites*. *See* Motion to Suppress, 17-21. The issue is thus not that Special Agent Moynihan failed to repeat the tip verbatim, but that had she accurately conveyed the tip – that the IP address accessed websites that show no illicit material on their homepage, and that there is no evidence that Mr. Kiejzo navigated past the homepage or had an account on the sites – no magistrate could have found sufficient probable cause to issue the warrant.

The government also argues that the "particularly violent content" hosted on Websites 2 and 3, suggests that "someone who visited the site was not innocently surfing the internet." Govt. Response, 8. It claims that anyone who visited a website with the welcome message, "welcome abusers and abusees" would be "likely to seek out child pornography to view and download." *Id*. These claims are both misleading and unsupported where the government's own discovery shows that that specific welcome message on Website 2 was **not visible** on the homepage of that website. In other words, to see that message, an individual would have to click on a button to navigate past the homepage. Again, the government has neither asserted nor produced any evidence that Mr. Kiejzo or anyone associated with that IP address in fact did navigate to the part of the website that displays that welcome message.

Finally, the government repeatedly claims that the affidavit's assurance that the FLA (the ▮) "had not interfered with, accessed, searched, or seized any data from any computer in the United States" is neither misleading nor a materially incomplete statement. Govt. Response, 10-13. The government continues to bury its head in the sand on this issue. It refuses to acknowledge the Murdoch declaration submitted by the defense that clearly states that there are two possible methods through which an IP address using the TOR network can be de-anonymized. *See* Motion to Suppress, Ex. 8, at ¶¶ 22-32. One is through a NIT. The other is through a traffic analysis technique. *Id*. Even if a NIT was not used here, the use of the traffic analysis technique would still pose significant reliability and accuracy issues, and the failure to disclose its use and attendant unreliability would be material omissions requiring a *Franks* hearing.

Instead of simply explaining how the IP address was de-anonymized here, the government casts aspersions on the defense. In doing so, it has abdicated all responsibility for ensuring that a foreign law enforcement agency has not systematically violated the Constitutional rights of Mr. Kiejzo and many others targeted in this investigation. It asks this Court to rely on the assurances of a foreign law enforcement agency that it strictly adhered to the rigorous standards of the Fourth Amendment of the U.S. Constitution. It asks this Court to do so despite the fact that not a single shred of evidence – beyond the ▮ word – has been shared with the defense or with the Court that would prove such a contention. The government can easily explain to this Court how the IP address was de-anonymized and, if it was through lawful means, put an end to this issue. It has chosen not to.

Only the defense has put forward an explanation of how the IP address here could have been de-anonymized. As explained in the Motion to Suppress, both of those explanations

5

substantially undermine probable cause. Mr. Kiejzo is thus entitled to a *Franks* hearing on this issue.

## CONCLUSION

For the reasons stated above, and those stated in his original Motion to Suppress, the Court should suppress all evidence and fruits obtained pursuant to the invalid search warrant and grant Mr. Kiejzo a *Franks* hearing.

Respectfully submitted,

Date: 9/23/2022

*/s/ Sandra Gant*
Sandra Gant, BBO # 680122
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

*/s/ Caitlin Jones*
Caitlin Jones, MN ID # 0397519
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 23, 2022.

*/s/ Sandra Gant*
Sandra Gant