UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO.: 4:20-cr-40036-MRG |
| v. | ) | |
| | ) | ***LEAVE TO FILE EXCESS PAGES*** |
| VINCENT KIEJZO | ) | ***GRANTED ON 4/26/24*** |
| | ) | |

## <u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Having accepted responsibility for his offense and having pleaded guilty a one-count indictment alleging possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), Vincent Kiejzo stands ready to be sentenced. By the date of his sentencing, Mr. Kiejzo will have been imprisoned for nearly six months,[1] following more than three years of successful, unblemished compliance with strict and onerous pretrial release conditions, including home confinement. Without any prior record of arrests or convictions, and with no minimum-mandatory term of imprisonment applicable in this case, we submit that a sentence of time served, followed by a period of supervised release of five years with special treatment, supervision, and registration conditions appropriately reflects both the nature and seriousness of the offenses and a fairer application of the sentencing guidelines. Mr. Kiejzo's personal history, the undoubtedly enormous collateral consequences that will result from his conviction, and the need to pay restitution also militate in favor of a time-served sentence.

We further submit that this disposition is consistent with the multitude of factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 552 U.S. 85 (2007); *United*

---

[1] *See* Presentence Report ("PSR") at ¶ 1, and pg. 1, "Release Status."

*States v. Booker*, 543 U.S. 220 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008). In making this request, we ask the court to impose a sentence that is fair and just, driven not by society's revulsion of his conduct but by the wealth of evidence that suggests Mr. Kiejzo will neither reoffend nor pose a risk to the public. The proposed sentence – which contemplates treatment in the community and restitution – will also deter future criminal conduct, protect the public, and ensure Mr. Kiejzo's continued work towards living a lawful and productive life.

## BACKGROUND AND HISTORY OF VINCENT KIEJZO

The Supreme Court, in *Pepper v. United States*, emphasized the principle underpinning federal sentencing that "the punishment should fit the offender and not merely the crime." 562 U.S. 476, 487-88 (2011) (internal quotations omitted). Viewing "every case as a unique study in human failings," the Supreme Court urged sentencing judges to consider the "widest possible breadth of information about a defendant" when determining a just sentence. *Id.; see also Koon v. United States*, 518 U.S. 81, 113 (1996). Like many who appear before this Honorable Court for sentencing, Vinnie Kiejzo is more than the worst thing he has done. Though the good works and deeds that have characterized his professional, home, and community life will be judged alongside and against his offense, he is greater than the sum of his conduct in this case.

At his core, and to those who know him well, Vinnie Kiejzo is a mild-mannered, kind, and serious young man. Friends, family, and his former employer describe him as someone who is thoughtful and sensitive about the needs and experiences of others, and who has contributed meaningfully to their lives, in ways both big and small. It is a testament to Mr. Kiejzo's character that, despite knowing of his offense conduct and his unequivocal admission of guilt, he continues to have people in his life who believe that he is a person who has done a lot of good and will

continue to do good.

He was raised for the first 11 years of his life by both of his parents, but Mr. Kiejzo's young life was impacted by his mother's absence starting when he was 12 years old. PSR at ¶ 44. She later moved to Oregon, followed by Mr. Kiejzo's sister, and that separation caused a significant rift in the family. *Id.* at ¶¶ 44, 48. In many ways, Mr. Kiejzo has not fully processed his mother's absence and, as his family relates, this undoubtedly took a toll on him. *See* Exhibit 2, Letter from Russell & Joan Doucette. His relationship with his mother deteriorated even further as she sank into the depths of alcoholism and, recently before he was detained in December, she suffered a fall which required brain surgery and rehabilitation. *Id.* at ¶ 44.

Thankfully, Mr. Kiejzo's relationship with his father has always been, and continues to be, immensely supportive and positive. *Id.* at ¶ 49; *see* Exhibit 1, Letter of Alexander Kiejzo. Except for one year when he lived a mile away in the same town, Mr. Kiejzo has always lived in his childhood home with his father. *Id.* at ¶ 51. Though letters from family are understandably influenced by the relationship and the concern for their loved one, the letters from Mr. Kiejzo's father and his aunt and uncle describe a "patient," "understanding," and incredibly hardworking young man with a tremendous capacity for rehabilitation. *See* Exhs. 1, 2. The letters are replete with examples of Mr. Kiejzo's thoughtful and generous acts – from community-building endeavors to individual acts of kindness. *See id.*, Exhibit 3, Letter of Judith Brennan. And, understandably, they are deeply concerned about what his future will look like after his conviction and sentence in this case – but their continued support is undoubtedly a factor that militates in favor of a community-based sentence.

After his conviction alone – notwithstanding any sentence imposed in this case – Mr. Kiejzo will never again be able to work in the profession for which he trained and obtained multiple

degrees. His role and work as a teacher will likely be emphasized by the government in their recommendation for a lengthy term of incarceration – but to be clear, there has never been any allegation or evidence whatsoever that Mr. Kiejzo was ever inappropriate with any student, let alone any child. He presents to this court with no prior criminal record of arrests or convictions, and instead demonstrates a proven track record of compliance with even the strictest of court-ordered conditions.

For over three years – from October 2020 until December 2023 – Mr. Kiejzo was released on conditions of release and an unsecured bond. D.E. # 19. His conditions of release included that he be subject to the supervision of a third-party custodian (his father); that he report to Pretrial Services as directed; that he surrender and obtain no new passport; that he restrict his travel to Massachusetts and maintain his residence at his home in Milford; that he not possess any weapons or consume substances; that he refrain from the excessive use of alcohol; that he participate in a mental health treatment program as directed by Pretrial Services; that he be subject to home confinement with location monitoring, with leave for court, medical and/or mental health treatment, and religious reasons; that he not possess any pornographic material of any kind; that he not have any contact with anyone under the age of 18 and avoid frequenting places where anyone under 18 would be likely to congregate; and that he not access the internet unless authorized by Pretrial Services. *Id.*; *see also* PSR ¶ 1.

To say these release conditions were extremely onerous is an understatement. Even with the modest modifications (permitting other pre-approved activities and access to television streaming services), Mr. Kiejzo lived under and abided by incredibly restrictive conditions for over three years, from October 2020 until the date of his plea on December 4, 2023. He took his obligations on pretrial release conditions incredibly seriously and *not once in over three years* did

he step a toe out of line. He meaningfully participated in and successfully completed mental health treatment through the Counseling & Psychotherapy Center. *Id.* at ¶ 56. And, though he was at home, he lived essentially cut off from the outside world, dependent on his father to provide even his most basic needs.

Mr. Kiejzo's remand to custody following his guilty plea was *mandatory*, pursuant to 18 U.S.C. §§ 3143(a)(2) and 3142(f)(1),and should not be construed as indicative of the court's view of the appropriateness or likelihood of an incarcerative sentence. Indeed, since his guilty plea and his detention at the Wyatt Detention Facility, he has continued to comport himself commendably well and his incurred zero disciplinary infractions. PSR at ¶ 4. Thus, despite the stress and anxiety attendant to imprisonment, and despite the fact that prior to this case he had never before been charged let alone imprisoned for any period of time, his respect for the court and the rule of law has been paramount and evinces his amenability for rehabilitation. Furthermore, to not consider his three years of home confinement at sentencing would be to ignore what is plainly true – that he has already had liberty significantly restricted and has, in some measure, been punished for his offense.

## <u>ARGUMENT</u>

### A SENTENCE OF TIME SERVED IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO EFFECTUATE THE SENTENCING GOALS OF 18 U.S.C. § 3553(a).

The First Circuit has stressed that sentencing determinations require a "more holistic inquiry" than simply plugging numbers into a guidelines calculation, and that, at least in the federal context, the federal statutory factors to be considered are "a tapestry of factors, through which runs the thread of an overarching principle [of parsimony]." *See Rodriguez,* 527 F.3d at 228, citing *Kimbrough,* 562 U.S. at 101. That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id*. In reaching a decision on what constitutes an appropriate sentence, the

5

court should "consider all the relevant factors" and "construct a sentence that is *minimally sufficient* to achieve the broad goals of sentencing." *Id.* (emphasis added).

For the reasons outlined below, we submit that a downward variant sentence of time-served is sufficient, but not more than necessary, to achieve the goals of sentencing. As a general matter, variances do not need to be related to a percentage "off" the guideline range and that kind of mathematical calculus is discouraged in favor of a more holistic application of all the sentencing factors under 18 U.S.C. § 3553(a). *See* U.S.S.G. § 1B1.1(c). The Supreme Court, in *Gall*, rejected a rule that would require "extraordinary circumstances to justify a sentence outside the Guidelines range" and "reject[ed] the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall v. United States*, 552 U.S. 38, 47 (2007).

## I.      Nature and Circumstances of the Offense.

There is perhaps no more shameful or odious offense as that which is perpetrated against the most vulnerable among us. The harms of child sexual abuse and exploitation are all too well known and documented. But the law – through charging and sentencing decisions – recognizes that those harms are perpetrated on a spectrum and that those who commit hands-on abuse can and should be punished more harshly, as should those who solicit, distribute, profit from, or entice child sexual abuse. There is no dispute that Mr. Kiejzo falls into none of those categories.[2] That is not to say, of course, that the offense of possession of child pornography is not serious – we firmly agree that it is. Indeed, Mr. Kiejzo has reviewed every victim impact statement submitted in his

---

[2] Though the government obtained a search warrant for Mr. Kiejzo's residence and devices predicated on information that the IP address registered to his home had visited two TOR hidden service sites, there is zero evidence that Mr. Kiejzo downloaded or obtained any material from those sites, or that he had a registered account on either site – "just that the IP address was used to visit the [sites]" on a single date. *See* PSR ¶ 8.

case and is profoundly affected by and remorseful for his conduct in this case, as he recognizes the harms that flow even from possession of this material alone.

But, with good reason, both state and federal courts treat possession offenders like Mr. Kiejzo differently from those who commit hands-on abuse or distribute child sexual abuse and exploitation material precisely because the harms are different. For example, for cases prosecuted in Massachusetts state courts, first-time possession offenders like Mr. Kiejzo would face no minimum-mandatory term of imprisonment, and would be subject to a maximum potential penalty of two-and-a-half years in a house of correction, or five years in state prison – terms which are lower than the advisory guideline sentencing range in this case. *See* M.G.L. c. 272, § 29C. *Cf.* M.G.L. c. 272, § 29B (subjecting those who disseminate such material to a 10-year minimum mandatory state prison term). Harsher penalties also apply to child pornography recidivists in state court (*see* M.G.L. c. 272, § 29C, subjecting second and third offenders to a minimum-mandatory term of five and 10 years in state prison, respectively). And of course, those who are prosecuted for receipt and/or distribution of child pornography in federal court, or who reoffend, are subjected to similar minimum-mandatory terms of imprisonment. *See e.g.* 18 U.S.C. §§ 2252A(b)(1). In this case, where, as explained below, the advisory sentencing guidelines recommend a range that is neither just nor commensurate to the conduct, this Honorable Court is instead guided by the principle of 18 U.S.C. § 3553(a) to impose a sentence that is sufficient, but not greater than necessary. And where his offense is a marked deviation from an otherwise lawful life, a time-served sentence is sufficient, but not greater than necessary.

## II. The Advisory Guideline Sentence Range Should be Afforded Little Weight in Determining an Appropriate and Sufficient Sentence in this case.

While courts must *consider* the sentencing guidelines, the Supreme Court has held that the Court may not presume that the guideline sentencing range is reasonable, and Congress has

*required* federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). *Kimbrough*, supra; *Gall*, supra. Where a particular guideline application does not take into account "empirical data and national experience" and would yield "a sentence greater than necessary to achieve § 3553(a)'s purposes," a district court's decision to vary from the guidelines is not an abuse of discretion. *Kimbrough*, supra, at 110. Here, although the calculation of the guidelines as expressed in the pre-sentence report is accurate,[3] the advisory guideline sentence range in this case is greatly inflated, unsupported by empirical evidence, and provides little assistance to the Court in determining a just sentence that is "sufficient but not more than necessary" as mandated by 18 U.S.C. § 3553(a). As such, this Honorable Court should consider and impose a below-guideline sentence.

In the time since the guideline for possession and receipt of child pornography (USSG § 2G2.2) was first created and promulgated, the total offense level applicable to Mr. Kiejzo's conduct after acceptance of responsibility has risen by 15 levels, from 13 to 28, and the applicable sentencing range has risen from 12-18 months to 78-97 months, representing an increase of roughly 550%, as demonstrated in the following table:

***Effect on Mr. Kiejzo's Guideline Range Over Time***

| Guideline Version | Applicable Guideline Section | Offense Level Calculation | Guideline Sentencing Range |
|---|---|---|---|
| Original Guideline (1987)[4] | § 2G2.2 | 13 Base Offense Level +2 Prepubescent minor | **12-18 months[5]** |

---

[3] Mr. Kiejzo does not dispute Probation's calculation of the guidelines: after adjusting for acceptance of responsibility, Mr. Kiejzo's total offense level is 28. PSR at ¶¶ 22-34. With a criminal history category I, the resulting advisory sentencing range is 70-87 months imprisonment and supervised release for five years. *Id.* at pg. 18.

[4] *See* 1987 Guidelines Manual (effective November 1, 1987), pg. 2.75, available at: https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1987/manual-pdf/Chapter_2_E-K.pdf

[5] *See* Sentencing Table for 1987 Guidelines Manual, available at: https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1987/manual-pdf/Chapter_5.pdf

| | | -2 Acceptance of responsibility<br>**13** | |
|---|---|---|---|
| 1991 Guidelines[6] | § 2G2.2 | 13 Base Offense Level<br>+2 Prepubescent minor<br>+4 Sadistic/masochistic material[7]<br>-2 Acceptance of responsibility<br>**17** | **24-30 months** |
| 1997 Guidelines[8] | § 2G2.2 | 17 Base Offense Level<br>+2 Prepubescent minor<br>+4 Sadistic/masochistic material[9]<br>+2 Use of computer<br>-3 Acceptance of responsibility<br>**22** | **41-51 months** |
| 2003 Guidelines[10] | § 2G2.2 | 17 Base Offense Level<br>+2 Prepubescent minor<br>+4 Sadistic/masochistic material[11]<br>+2 Use of computer<br>+5 Number of images (600+)<br>-3 Acceptance of responsibility<br>**27** | **70-87 months** |
| 2004 Guidelines[12] | § 2G2.2 | 18 Base Offense Level<br>+2 Prepubescent minor<br>+4 Sadistic/masochistic material[13]<br>+2 Use of computer<br>+5 Number of images (600+)<br>-3 Acceptance of responsibility<br>**28** | **78-97 months** |

[6] *See* 1991 Guidelines Manual (effective November 1, 1991), pg. 133, available at: https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1991/manual-pdf/Chapter_2_E-K.pdf
[7] Per his PSR, an enhancement did not apply to Mr. Kiejzo for U.S.S.G. § 2G2.2(b)(4)(A), and instead he received an enhancement under § 2G2.2(b)(4)(B) which was not an issue subject to enhancement under the 1991 guidelines, but for parity and comparison, we include it here.
[8] *See* 1997 Guidelines Manual (effective November 1, 1997), pg. 156, available at: https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1997/manual/CHAP2-3.pdf
[9] *See* note 7, supra.
[10] *See* 2003 Guidelines Manual (effective November 1, 2003), pg. 189, available at: https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2003/manual/CHAP2-3.pdf
[11] *See* note 7, supra.
[12] *See* 2004 Guidelines Manual (effective November 1, 2004), pg. 198, available at: https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2004/manual/CHAP2-3.pdf
[13] *See* note 7, supra.

The child pornography guidelines have been called "a one-way ratchet, repeatedly turned by Congress,"[14] with the increasingly punitive amendments driven by politics rather than empirical or evidence-based research. *United States v. Dorvee*, 616 F.3d 174, 184-85 (2nd Cir. 2010). Indeed, the Sentencing Commission "openly opposed these Congressionally directed changes" several times over the years, stressing that the amendments outlined above prevent the Commission from "provid[ing] proportionality among different grades of seriousness" and would "reintroduce sentencing disparity among similar defendants." *Id.* at 185 (internal quotations omitted). Although political and moral judgments guide sentencing considerations in virtually all criminal cases, as Chief Judge Saylor in this district emphasized, "the sentencing of child pornography offenders has been politicized to a degree not present in other cases," and is not predicated on "careful empirical analysis." Excerpt Transcript of Sentencing at 5, *United States v. Bhavsar*, Docket No. 10-CR-40018-FDS, ECF No. 56 at pg. 5.

### Support for a "Reconstructed Guideline" Analysis for U.S.S.G. § 2G2.2

In reality, the sentencing guidelines for offenses under USSG § 2G2.2 are more often <u>not</u> followed because of the unjustifiably high sentences they call for.[15] Perhaps no other guideline has been so roundly rejected and criticized by the courts. In *Dorvee*, the Second Circuit described USSG § 2G2.2 as "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." 616 F.3d at 188.[16] The Second Circuit also

---

[14] *See also* Carol S. Steiker, "Lessons from Two Failures: Sentencing for Cocaine and Child Pornography under the Federal Sentencing Guidelines in the United States," 76 *Law & Contemp. Probs.* Vol, 76, No. 1, at 37 (2013).

[15] *See* United States Sentencing Commission, *Mandatory Minimum Penalties for Sex Offenses in the Federal Criminal Justice System*, January 2019, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190102_Sex-Offense-Mand-Min.pdf, at 49-52 (noting that in Fiscal Year 2016 only 26.8% of child pornography offenders were sentenced within the guideline range).

[16] The *Dorvee* decision is only one in a series of unrelenting criticisms of the child pornography guideline. *See, e.g., United States v. Hanson*, 561 F.Supp.2d 1004, 1009 (E.D. Wis. 2008) (imposing

characterized the mechanical application of the child pornography guidelines as "fundamentally incompatible with § 3553(a)," *Id.* at 187, and noted that most of the §2G2.2 enhancements "are all but inherent to the crime of conviction" and "routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Id.* at 186.[17] At least one district court has categorically rejected § 2G2.2 on "policy grounds, even in a 'mine-run' case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case." *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1104 (N.D. Iowa 2009).

The Guidelines' "specific offense characteristics" under § 2G2.2 outlined in the table above are, as *Dorvee* points out, *anything but* specific, as they apply to almost all convictions under the guideline.[18] A December 2012 Sentencing Commission report to Congress on federal child pornography offenses similarly noted that in non-production cases, several of the sentencing enhancements applied in the vast majority of §2G2.2 cases, as illustrated in the table below.[19]

---

a non-guideline sentence of 72 months, when the guideline sentencing range was 210-262, noting that from 1994 to 2007 the mean sentence in child pornography increased from 36 months to 110 months because of "arbitrary increases" rather than by any empirical approach by the Sentencing Commission); *United States v. Johnson*, 588 F.Supp.2d 997, 1003 (S.D. Iowa 2008) ("As far as this Court can tell, these modifications [to the child pornography guideline] do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses."); *United States v. Stern*, 590 F.Supp.2d 945 (N.D. Ohio, Dec. 17, 2008) ("illogic" of the child pornography possession guideline rendered it worthy of only limited deference and sentence of twelve months sufficient notwithstanding 46-57 months guideline range).

[17] *See also United States v. Grober*, 595 F.Supp.2d 382, 397 (D.N.J. 2008) (characteristics identified by the Sentencing Commission as enhancements are "irrational because logically and factually, the characteristics are simply not genuine aggravating factors. Rather, they are inherent in just about any downloading offense.").

[18] *See also* USSC, *Use of Guidelines and Specific Offense Characteristics, Guideline Calculation Based, Fiscal Year 2017*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2017/Use_of_SOC_Guideline_Based.pdf, at 45-46 (showing that in Fiscal Year 2017, enhancements were applied with the following frequency in cases sentenced under §2G2.2: prepubescent minor - 94.1%; sadistic or masochistic content – 71.2%; distribution (of any kind) – 51.1%; use of computer – 95.7%; number of images – 95.3% (74.7% for 600 images or more).

[19] *See* USSC, *Report to the Congress: Federal Child Pornography Offenses* (2012), Table 8-1: FY10

| | All §2G2.2 Cases N = 1654 | Possession N = 874 | Receipt N = 428 | Transportation/ Distribution N = 352 |
|---|---|---|---|---|
| P/P/M | 96.3% | 95.4% | 97.4% | 96.9% |
| S/M | 74.2% | 68.1% | 80.1% | 82.1% |
| Use of Computer | 96.3% | 95.8% | 96.0% | 97.7% |
| Number of Images | 96.9% | 94.6% | 98.4% | 94.6% |

Because these specific offense characteristics "now apply to most offenders," the Sentencing Commission warned that the § 2G2.2 guideline "fail[s] to differentiate among offenders in terms of their culpability."[20] The Commission concluded that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness."[21]

Many judges in this district have not followed this guideline and its applicable enhancements, for these exact reasons advanced by the Sentencing Commission. One judge asserted that the guideline for this offense is "flawed," and "doesn't command the same respect that other aspects of the Guidelines may." *United States v. Hooper*, 12-CR-10156 (GAO) (Judgment, Dec. 4, 2012); *United States v. Keith*, 11-CR-10294-GAO (ECF No. 106, Transcript of Sentencing, Sept. 29, 2014). In those cases, Judge O'Toole "reconstructed" the guideline "by adjusting for the exclusion of those adjustments" that occur in over 90 percent of cases as set forth in the Sentencing Commission's 2012 report, and "omitted the adjustments" for prepubescent-minor, use of a computer, and number of images, thereby reducing the defendant's offense level

---

Application Rates of Enhancements in § 2G2.2, pg. 209 (omitting application rates for "pattern of abuse" enhancement, as it is not relevant here) (available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf).

[20] *Id.* at iii, 139, 323.

[21] *Id.* at xviii, xxi, 139, 321.

by nine. *See Keith*, supra, at pg. 53.[22] Indeed, Judge Casper recognized the inappropriateness of some of these universally applied enhancements and recognized the widespread criticisms of the child pornography guidelines. *See United States v. O'Hern*, 14-cr-10241-DJC (ECF No. 45-2, Transcript of Sentencing, July 21, 2015, pg. 4) (imposing a more than 50-percent downward variance to 63 months where the guideline range was 151-188 months and the conduct involved both distribution and possession of child pornography).

The same flaws in the guidelines present themselves here. Using this "reconstructed" guideline and omitting the adjustments for prepubescent-minor and use of a computer (which are inherent to the crime of conviction), Mr. Kiejzo's offense level would be reduced by four levels to an adjusted GSR of 24 after acceptance, resulting in an advisory guideline sentencing range of 51-63 months. Should the court also omit the adjustment for number of images, Mr. Kiejzo's offense level would be reduced by an additional five levels to an adjusted GSR of 19 after acceptance, resulting in an advisory guideline sentencing range of 30-37 months.

### Support for Downward Variance and Probation Sentence for Possession Offenses Under U.S.S.G. § 2G2.2

In 2021, the Sentencing Commission published a detailed report to Congress on non-production child pornography offenders.[23]  The Commission studied and reported on the facts,

---

[22] In *United States v. Bhavsar*, Judge Saylor noted "the enhancement for use of a computer is overkill at best in an age in which all photography and all circulation of pornography is done by computer; and likewise, the enhancement for images involving prepubescent minors is duplicative when no other kinds of cases are prosecuted[.]" 10-CR-40018-FDS, ECF No. 56, Excerpt Transcript of Sentencing at 6. *See also United States v. Kearney*, 08-CR-40022-FDS, ECF No. 151, Transcript of Sentencing at 33 (noting that the specific offense characteristics under §2G2.2 are "based on purported individualized factors, but the factors aren't individualized," and that the enhancements for images depicting prepubescent minors, number of images, and use of a computer are" duplicative and unnecessary.").

[23] U.S. Sent'g Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* (2021), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf at page 7 (13 of 94).

circumstances, and sentences of all of the 1,340 offenders sentenced under Guideline § 2G2.2 during FY 2019.[24]  Of those 1,340 offenders, courts sentenced 119 defendants on the basis of a "possession" offense.[25]  For these 119 defendants, the mean advisory guideline range was, like Mr. Kiejzo's, 78 to 97 months, but 81.5% of those defendants received a downward variance.[26] Despite a handful of repeat offenders receiving sentences in excess of fifteen or twenty years, the mean sentence was still only 47 months.[27] Nationwide, 13% of the 119 received probationary sentences.[28] Put another way, one out of every 7.7 defendants sentenced in the United States on the basis of a possession offense received probation.

The data from the 2021 report, however, includes specific offense characteristics that are more serious and do not apply to Mr. Kiejzo's case: 82 of the 119 defendants punished for possessing child pornography actually engaged in relevant conduct that included swapping or distribution. Those "possessors-in-name-only" typically had a total offense level of 30 and a resulting Guideline Range of 97-121 months.[29] Their average sentence was slightly higher than for "pure" possession conduct, at 57 months[30] and contributed to raising the overall average sentence. And yet, some members of that group of still received probation.[31] The fact that Mr. Kiejzo is one of only 2.7% of offenders nationwide (37 of 1,340)[32] whose offense is truly limited to possession distinguishes him from all other offenders sentenced using the exact same guideline and supports the conclusion that he should receive a time-served, community-based sentence.

---

[24] *Id.* at 9 (15 of 94).
[25] *Id.* at 54 (60 of 94).
[26] *Id.* at 55 (61 of 94).
[27] *Id.* at 54 (60 of 94).
[28] *Id.* Calculated by dividing 119 (total cases) by 15 (defendants sentenced to probation).
[29] *Id*. at 57 (63 of 94).
[30] *Id.*
[31] *Id.*
[32] *Id.*

Moreover, consistent with the directive set forth at 18 U.S.C. § 3553(a)(6), the request for a community-based, non-incarcerative sentence here also finds support in the imposition of time-served and/or probation sentences in other comparable possession of child pornography cases. Some relevant examples include:

- *United States v. Crespo-Rios*, No. 08-cr-208, 2015 WL 6394256, *1 (D.P.R., 2015) (holding that "time served followed by a long period of supervised release [ ...] is justified in view of each of the sentencing factors outlined in 18 U.S.C. § 3553" for defendant convicted of possession of child pornography and transferring obscene material to a minor, where GSR was 70-87 months and defendant engaged in mental health treatment pending sentencing);

- *United States v. Proulx*, 11-CR-10274 (D. Mass. 2012) (defendant who distributed and transported child pornography, uploading to a website to make a tee shirt out of the child pornography, convicted of possession only for 6,000 images; GSR was 51-63 months; sentenced to five years' probation, the first six months on home detention with electronic monitoring);

- *United States v. R.V.*, No. 14-cr-316 (E.D.N.Y. 2016) (five days' time-served with seven years' supervised release for possession-only offense where GSR was 78-97 months, defendant downloaded child pornography for one year with minor children in the home, and chatted online with minors);

- *United States v. DeRoche*, 2:19-CR-197-RSL (W.D. Wa. 2021) (for possession-only defendant, notwithstanding possession of 60,000 CSAM files and GSR of 78-97 months, sentence of five years of probation with mental health, substance abuse and sex offender treatment conditions);

- *United States v. Roberts*, No. 4:16-cr-63 (E.D. Va. 2017) (Playpen defendant initially charged with access with intent to view and receipt of child pornography pled guilty to access with intent to view, with GSR of 63-78 months, received time-served sentence of twelve days with one year on home electronic monitoring based on lack of criminal history, prior productive and stable life, little chance of recidivism);

- *United States v. Chung*, No. 3:16cr33 (W.D. Wis. 2016) (five years' probation for possession-only offense for defendant who possessed over 1,000 files of child pornography and had a confirmed account on an onion site);

- *United States v. Lovett*, 16-CR-020 (D. Vt. 2017) (one-day time served followed by five years of supervised release for possession-only offense);

- United *States v. Lorente*, No. 2:15cr274 (W.D. Wa. 2017) (time-served sentence with 15 years' supervised release on possession charge, with charge concession of receipt of child pornography and dismissal of 5-year minimum-mandatory term of imprisonment);

- *United States v. Arkhangorodskiy*, No. 14-cr-283 (E.D.N.Y. 2015) (where PSR provided for GSR of 97-121 months, sentence of four days' time-served with five years' supervised release for possession-only offense, with conditions to include 200 hours of community service, and 6 months of home confinement);

- *United States v. Stokes*, No. 13-cr-404 (E.D.N.Y. 2014) (one day time-served with five years' supervised release for possession-only offense with GSR of 97-121 months).

Mr. Kiejzo's request for a time-served sentence thus finds support in both the Sentencing Commission's own data and in similar sentences imposed on similarly situated defendants charged and convicted of possession of child pornography.

### III.    Mr. Kiejzo's Reduced Risk of Recidivism Warrants a Time-Served Sentence.

Many courts have recognized and cautioned against punishing consumers of child pornography more harshly in response to the societal pressure to punish their "prurient interests" and in an effort to punish them as proxies for producers and distributors:

> […] wanting to punish *someone* for the crimes that these horrible images embody, society seeks harsh sentences for anyone who participates in this market. Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers. The resulting punishment under the Guidelines may be more a reflection of our visceral reaction to these images than a considered judgment of the appropriate sentence for an individual defendant.

*United States v. Cruikshank*, 667 F. Supp. 2d 697, 703 (S.D.W. Va. 2009).[33] The reality instead demonstrates that "first-time child pornography possession offenders [like Mr. Kiejzo] appear to be very low risk of sexual recidivism, in contrast to those with any prior or concurrent criminal

---

[33] *See also* Rachel Aviv, "The Science of Sex Abuse," *The New Yorker*, Jan. 14, 2013, available at: https://www.newyorker.com/magazine/2013/01/14/the-science-of-sex-abuse (rather than relying on social science and empirical evidence, lawmakers have treated child pornography offenses as if they were "inchoate" crimes, and they have "become a kind of proxy – a way to incapacitate men who we fear have already molested someone, or will in the future.").

convictions or those who engage in other sexual offending [e.g., attempted or actual contacts with a child, production of child pornography],"[34] and "online offenders who had no history of contact offenses almost never committed contact sexual offenses."[35]

Empirical research shows – contrary to politicized hysteria – that internet child pornography offenders, like Mr. Kiejzo, "do not, as a group, present a significant risk of escalation to contact sexual offenses."[36] This is not meant to downplay by any means the trauma and prevalence of child pornography, but rather to put Mr. Kiejzo's conduct in the greater political, empirical, and comparative context – and to demonstrate that individualized determinations are necessary to achieve parity and fairness in sentencing for this kind of conduct.

While many laws pertaining to child pornography offenders are driven by a fear of recidivism, sentencing commission statistics show that recidivism rates for child pornography offenders is among the lowest across all types of criminal offenders. U.S.S.C., "The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders" (March 2017) at A-15 and A-16 (showing that child pornography offenders had **the lowest** rate of reconviction and reincarceration among all offenders).

---

[34] "Child Pornography Offender Characteristics and Risk to Reoffend," Testimony of Michael C. Seto, Ph.D., C. Psych. before the USSC, Feb. 6, 2012, at pg. 4, available at: https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20120215-16/Testimony_15_Seto.pdf

[35] Michael C. Seto et al., "Contact Sexual Offending by Men With Online Sexual Offenses," *Sexual Abuse* Vol. 23, Iss. 1, at pg. 137 (2011); *see also* Richard Wollert, Written Testimony Presented to the U.S. Sentencing Commission, "The Implications of Recidivism Research and Clinical Experience for Assessing and Treating Federal Child Pornography Offenders," Feb. 15, 2012, at pgs. 14-17, 21-22 (reporting that in his study of 72 federal child pornography offenders under supervision, including three production offenders, with varying criminal histories, two were arrested for possessing child pornography and none were arrested for a contact offense within four years), available at: https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20120215-16/Testimony_15_Wollert_2.pdf

[36] Helen Wakeling et al., "Comparing the Validity of the RM 2000 Scales and OGRS3 for Predicting Recidivism by Internet Sexual Offenders," *Sexual Abuse: J. Res. & Treatment*, Vol. 23, Iss. 1 at pg.164 (2011).

Finally, Mr. Kiejzo's history and characteristics make him a low risk to re-offend upon his release. According to the United States Sentencing Commission, recidivism rates (re-arrest, re-conviction, and supervised release violation rates) generally "decline relatively consistently as age increases," and for offenders in both Mr. Kiejzo's age group (36-40) and criminal history category (I), the recidivism rate drops by nearly two-thirds, from 35.5% for offenders under age 21, down to 12.1%.[37] For sex offenders, specifically, recidivism declines with age, with age being one of the most robust predictive factors for decreased risk of sexual recidivism.[38] Thus, when the data is considered along with the low recidivism rates for people with no prior criminal history whatsoever, like Mr. Kiejzo, a lengthy sentence is not necessary to fulfill this sentencing goal. Indeed, Mr. Kiejzo – through his perfect record of compliance with home detention and pretrial release conditions over three years – has already demonstrated that his arrest and prosecution have deterred him from reoffending in any way.

## IV.    Collateral Consequences: A Lifetime of Punishment.

Mr. Kiejzo's arrest and conviction were covered heavily by local press, and early court dates were attended by interested community members. He, of course, lost his job and as a result of the onerous pretrial conditions in this case was effectively ostracized from his community. The resulting public humiliation has taken an enormous toll on him, and as a result, minimal, if any, additional general deterrence will be achieved by the imposition of a lengthier term of imprisonment in his case.

---

[37] U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (2004), available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

[38] *See* R.K. Hanson, *Recidivism and Age: Follow-up Data from 4,673 Sexual Offenders*, 17 J. Interpers. Violence 1046, 1054 (2002).

As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (district court's consideration of the lasting effects of being required to register as a sex offender is appropriate mitigating factor in sentencing); *United States v. Autery*, 555 F.3d 864, 875 (9th Cir. 2009) (characterizing sex offender registration as "a punishment of lifelong significance (which can cause the listed person to become so socially ostracized that he has difficulty living in many communities)").

These collateral consequences of conviction – though civil, and not intentionally punitive in nature – should be considered in the calculus of a sentence's reasonableness and parsimony. This is especially true where the "collateral consequences of child pornography convictions are extreme, perhaps more extreme in some ways than any other form of criminal activity… It is a crime of extreme shame and humiliation." *Bhavsar*, 10-CR-40018-FDS, ECF No. 56, Excerpt Transcript of Sentencing at 8.

For Mr. Kiejzo, these convictions will follow him the rest of his life, no matter whether he reoffends and no matter whether he successfully completes treatment. It will be significantly harder for Mr. Kiejzo to find a job, to find his own apartment, and even to find someone willing to be in a relationship with him. He likely will be subject to harassment, and unfortunately perhaps even violence, both in prison and afterwards in the community.  He will be ashamed, and shamed, for the rest of his life. He profoundly understands the harm that his offenses have caused to his victims, to his family and friends, and to his community. But in considering the need for parsimony and for the sentence to reflect an individualized determination of his actions, culpability, personal history, and low risk of recidivism, it is important to recognize that Mr. Kiejzo's convictions alone

in this case carry a lifetime of punishment and will require a lifetime of reparation in the eyes of his community and broader society.

**V.      A Time-Served Sentence Satisfies and Promotes the Need to Pay Restitution.**

The restitution obligations that Mr. Kiejzo faces is an important sentencing goal the Court must consider under 18 U.S.C. § 3553(a)(7), and one that counsel submits is of paramount importance here. *See United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (acknowledging district court's discretion to depart from guidelines to impose probationary sentence, since the "goal of obtaining restitution for the victims of Defendant's offense … is better served by a non-incarcerated and employed defendant."). Mr. Kiejzo intends to make restitution to the victims, and to cooperate in the government's efforts to collect that restitution. If incarcerated, Mr. Kiejzo will not be able to contribute to restitution, and the longer Mr. Kiejzo is in prison, the longer he will be unable to contribute in any meaningful way to restitution, and the fewer productive years he will have remaining when he gets out.

Thus, the sentence proposed by the defense fulfills the need to provide restitution to the victims of the offense. Specifically, Mr. Kiejzo has agreed to pay restitution to <u>all victims who have requested restitution</u>, and in consultation with victims' counsel, as of the date of this filing has thus far agreed to pay a total of $29,500 in restitution.

Undersigned counsel anticipates resolving two outstanding restitution requests before the sentencing hearing in this case but has been unable to finalize settlements with victims' counsel on those two matters. Additionally, on today's date, the government informed undersigned counsel of an additional restitution request that will be submitted, but it has not yet been received or reviewed. It is expected that the total restitution figure will be higher at sentencing, but counsel provides the court with the information she has available at the time of this filing.

### VI. Mr. Kiejzo's Indigency Makes Other Financial Penalties and/or Fines Inappropriate in this case.

Mr. Kiejzo submits that neither a fine nor the applicable special assessments, pursuant respectively to 18 U.S.C. § 3014 and 18 U.S.C. § 2259A, are appropriate in this case. *See* 18 U.S.C. § 3572 (listing the factors to be considered in determining whether a fine is appropriate).

Specifically, Mr. Kiejzo is indigent and has been deemed so by the Court by virtue of undersigned counsel's appointment. He has been detained for nearly the past six months, and before that was subject to home confinement for over three years. At present, he has no income and he has significant personal debt (specifically, a high outstanding balance of student loans). PSR ¶ 66. He fully intends to prioritize payment of his restitution obligations that we expect to be imposed in this case and submits that the imposition of a fine would impair his ability to fulfill his restitution obligations. *See* 18 U.S.C. § 3572(b) ("If, as a result of a conviction, the defendant has the obligation to make restitution to a victim of the offense […] the court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution.").

Mr. Kiejzo further submits that his potential future earnings are minimal and should in any event be weighed against the substantial restitution awards he anticipates will be imposed in this case. If the Court is inclined to evaluate Mr. Kiejzo's future earning capacity, however, he would still be deemed indigent. After whatever sentence is imposed in this case, Mr. Kiejzo will present with a significant gap in employment, and will undoubtedly be unable to work in his prior profession, and as such his earning and working capacity will be substantially reduced. This is to say nothing, of course, of his ability to seek and maintain employment after conviction for a sex offense.

For these reasons, Mr. Kiejzo submits that he is indigent and unable to afford a fine or the

special assessments otherwise applicable in this case and asks this Honorable Court not to impose them.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should impose the proposed sentence of time served followed by five years of supervised release.

Respectfully submitted,
VINCENT KIEJZO
By His Attorney:

DATED: 4/26/24

*/s/ Sandra Gant*
Sandra Gant
BBO #: 680122
Federal Defender Office
51 Sleeper Street, Fifth Floor
Boston, MA 02210
Tel: 617-223-8061

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 26, 2024.

*/s/ Sandra Gant*
Sandra Gant